## GEORGE GARDNER *vs.* CITY OF BOSTON.

The owner of a parcel of land at the end of a court conveyed to the owners of the estates abutting on the court "the use of said parcel for light, air, and as an ornament to said court; said parcel to be forever kept open and used as a garden, or for the purpose of extending said court;" "this not to be construed to affect the grantor's right of soil in said parcel." He afterwards conveyed the parcel to the owner of an adjoining estate. *Held*, that his grantee had a right to pass over the parcel to the court.

A landowner on whom an assessment for the extension of a street has been laid under the St. of 1866, *c.* 174, is not estopped to petition for a jury to revise the assessment, by reason of his having asked for an apportionment thereof under § 6.

PETITION to the superior court for a jury to revise a betterment assessed by the board of aldermen of the city of Boston on land of the petitioner, under the St. of 1866, *c.* 174.

At the trial in the superior court, before *Brigham*, C. J., it appeared that Charles Ewer, by deed dated April 18, 1826, and reciting that by divers deeds of conveyance of even date therewith he had conveyed to Charles Wells and eight others, certain parcels of real estate in Boston, in a new court called Avon Place, and that he was owner of a parcel of land situate at the southeasterly end of said Avon Place, bounded northeasterly by land of Samuel P. Gardner, southeasterly by land of William Prescott, southwesterly by land of said Ewer, and northwesterly by Avon Place, did "grant, bargain, sell and convey unto said Wells" and the eight others, "and to their heirs and assigns, and to all other persons who may hereafter become owners of the several premises abutting on said Avon Place, as the same is now laid out," "as an easement appurtenant to said premises, the use of said parcel of land, for light, air, and as an ornament to said court said parcel of land to be forever kept open and used as a

garden, or for the purpose of extending said court to the easterly line of said Prescott's land, of the width of thirty-four feet, two inches, being the present width of said court; but for no other uses or purposes whatsoever; this instrument is not, however, to be construed to affect said Ewer's right of soil in said parcel of land;" and covenanted that "said parcel of land shall forever be kept open as aforesaid, to and for the purposes aforesaid, and none other."

By deed dated January 8, 1831, Ewer conveyed to William Prescott and Samuel P. Gardner the parcel of land described in the foregoing deed, and "also a right of way from said piece of land over said Avon Place, and also from the lot on which the house of said Prescott stands, bounding northwesterly on said piece of land and southwesterly on Bedford Street, and from the lot on which the house of said Gardner stands bounding southwesterly on said piece of land and northwesterly on Summer Street, and from each and every part of said lots to Washington Street, as appurtenant to said lots, to be held and enjoyed in common and equally with the others on said Avon Place;" and covenanted that the land was free of incumbrances "excepting certain restrictions contained in a deed to Charles Wells and others;" and warranted "said piece of land subject to said restrictions and said right of way" to the grantees.

Samuel P. Gardner devised to the petitioner (who was his son) his real estate in Summer Street, "together with all my right in a piece of land at the eastern end of Avon Place, adjoining my said real estate, which piece of land I bought with William Prescott, Esq., in the year 1831, to get a back passageway to our respective estates."

By orders of the board of aldermen of Boston, under the St. of 1866, *c.* 174, Avon Place was extended southeasterly to Chauncey Street, and an assessment for the expense of such extension was laid on the petitioner's land on Summer Street extending back to Avon Place. The petitioner contended that he had right of way from this land before the extension of Avon Place, on, to and over said Place to Washington Street, under the devise from his father.

On the assessment of the betterment, the petitioner received notice thereof, dated April 5, 1869 ; and on April 23, 1869, he notified the board of aldermen that he wished an apportionment thereof as provided in the St. of 1866, *c.* 174, § 6. The apportionment was made, but no part of the assessment was ever paid.

The judge ruled that the petitioner had no right of way from his estate on Summer Street to Avon Place over the land conveyed to his father and Prescott by Ewer, and also by reason of the apportioning of the assessment was estopped to call in question the amount thereof ; directed a *pro formâ* verdict for the respondents ; and reported the case for the revision of this court.

*P. W. Chandler & J. B. Thayer,* for the petitioner.

*J. P. Healy & J. L. Stackpole,* for the respondents. 1. Whether the parcel of land mentioned in the deed from Ewer to Wells and others should be used as a garden, or whether Avon Place should be extended over it, was an option to be exercised by the grantees and not by the grantor. Shep. Touch. 83. *Hayward's case,* 2 Co. 35 *b. Jackson* v. *Hudson,* 3 Johns. 375, 387. *Jackson* v. *Blodget,* 16 Johns. 172, 178. Co. Lit. 145 *a. Doe* v. *Dixon,* 9 East, 15. *Dann* v. *Spurrier,* 3 B. & P. 399. *Chippendale* v. *Thurston,* 4 C. & P. 98. *Layton* v. *Pearce,* 1 Dougl. 15. *Price* v. *Dyer,* 17 Ves. 357, 363. A right of way would be inconsistent with the use of the land as a garden. *Oliver* v. *Pitman,* 98 Mass. 46.

2. The request for an apportionment was an acceptance of the adjudication ; it was irreconcilable with the right of vacating the assessment, which is the effect of a petition for a jury.

CHAPMAN, C. J.* The petitioner's title to the lot in question is under his father's will, describing it as a piece of land at the eastern end of Avon Place, adjoining his real estate in Summer Street, which he "bought with William Prescott, Esq., in the year 1831, to get a back passageway" to their respective estates, and giving to the petitioner all his right to it. In 1831, Charles Ewer had granted and conveyed to his father and Prescott all his right, title, interest and estate in and to this lot, describing it by metes and bounds ; also a right of way from the lot over Avon

---

* GRAY, J., did not sit in this case.

Place, " and also from the lot on which the house of said Prescott stands," " and from the lot on which the house of said Gardner stands, and from each and every part of said lots, to Washington Street, as appurtenant to said lots, to be held and enjoyed in common and equally with the other abutters on said Avon Place." He warrants his right to convey the land and right of way, subject to the restrictions contained in a deed to Charles Wells and others. The deed to Charles Wells and others was dated April 18, 1826. It recites that, whereas Ewer had, by divers deeds of that date, conveyed to Charles Wells, and eight other persons named, certain parcels of land in a new court called Avon Place, and whereas he is owner of a parcel of land situate at the south-easterly end of Avon Place, describing the piece in question, he conveys to Wells and the other persons, and to their heirs and assigns, " and to all other persons who may hereafter become owners of the several premises abutting on said Avon Place," " as an easement appurtenant to said premises, the use of said parcel of land for light, air, and as an ornament to said .court ; said parcel of land to be forever kept open and used as a garden, or for the purpose of extending said court to the easterly line of said Prescott's land, of the width of thirty-four feet, two inches, being the present width of said court ; but for no other uses or purposes whatsoever ; " but providing that the instrument " is not to be construed to affect said Ewer's right of soil in said parcel of land." This language does not import a right in the grantees to use the piece of land as a garden, or to extend the court. All they acquired was a right to light and air, and the view of the grounds. The covenant to keep it open, and use it in the way stated, was a covenant of the grantor ; and as it was for him to do the acts prescribed, if he performed the duty either of using it for a garden or for extending the court to the easterly line of Prescott's land, his covenant was performed. The exten sion of the court could not abridge any privilege granted to Wells and others. Nor could the conveyance to Gardner and Prescott, by the deed of 1831, and authorizing the grantees to use Avon Place as a way, have that effect. The right to use it as a way in common with his grantees had always been in Ewer, and he had not restrained himself from granting it.

The plaintiff therefore had a right of way over Avon Place, as he contends.

But the respondents contend that the petitioner is estopped from maintaining this process, because, after the assessment, namely, April 5, 1869, he was notified thereof by the treasurer and collector, and requested to pay the same, and thereupon, on the 23d day of the same month, he notified the mayor and aldermen of his desire that the tax be apportioned, as provided in the sixth section of the St. of 1866, *c.* 174, and the apportionment was made accordingly. That section provides that, if the owner of any estate assessed desires to have the amount of any assessment apportioned, " he shall give notice thereof in writing to the board of aldermen at any time before a demand is made upon him for the payment thereof ; and said board shall thereupon apportion said amount into three equal parts," and certify the same to the assessors, who shall add it to the tax bill in equal parts for the three years next ensuing.

The question presented is, whether, by the true construction of the statute, the owner of the land is still at liberty, after such apportionment, to have the doings of the board of aldermen revised by a jury. It will be noticed that the application for apportionment must be made at a very early period. It must be before payment of the assessment is demanded. But, by the seventh section, " any party aggrieved by the doings of the board of aldermen under this act shall have the like remedy by petition for a jury or otherwise, and with the same limitations as to the time of bringing such petition, as in other cases of laying out streets." By the Gen. Sts. *c.* 43, § 79, the petition may be filed in the superior court at any term held within a year after the passage of the order, with provision for further delay in case a suit is pending. These provisions imply that a petition for a jury may be filed long after the time for requesting an apportionment may have expired. It was the apparent intent of the statute to allow the landowner both the right of trial by jury, and of having his assessment apportioned. And since one provision allows him a year or more to determine whether he will apply for a jury, it would be a harsh construction to hold that he must sacrifice an

important privilege, granted by another provision, unless he decides in a much shorter period. The apportionment ought not to be regarded as a bar to the petition.

.We have not noticed .the fact that the request for apportionment was not made till after the demand for payment of the assessment; because the objection was waived by the board of aldermen, and the apportionment was made.

*Verdict set aside ; new trial ordered.*